UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------X

LIZ NERO,                                    **MEMORANDUM & ORDER**

                                              08-CV-1459 (KAM)(RLM)

               Plaintiff,

      -against-

LAW OFFICE OF SAM STREETER, P.L.L.C.,

              Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, UNITED STATES DISTRICT JUDGE:**

       Plaintiff, Liz Nero ("plaintiff" or "Nero") commenced an individual and putative class action[1] under the Fair Debt Collection Practices Act ("FDCPA" or "the Act") 15 U.S.C. §§ 1692, *et seq.*, in connection with efforts by the Law Office of Sam Streeter, P.L.L.C. ("defendant" or "Streeter Law") to collect payment on an alleged debt plaintiff owed.  Defendant failed to answer or otherwise defend this action.  Accordingly, default was entered against defendant.  (*See* Oct. 30, 2008 Order.)  At this time, plaintiff seeks statutory damages, attorneys' fees, and costs.

---

[1]    Plaintiff has since withdrawn her application for class certification. (*See* Kidd Aff. ¶ 6.)  Accordingly, the court will resolve the instant motion as it relates to plaintiff in her individual capacity.

1

**BACKGROUND**

The following allegations are taken from the complaint and are unchallenged.  On February 28, 2008, Streeter Law sent a letter to plaintiff in an attempt to collect an alleged personal debt (the "Letter").  (Compl. ¶ 6).  The Letter provided plaintiff with Streeter Law's contact information, including its post office address in Texas, its toll free telephone number, its local (Texas) telephone number, and its website.  (Compl. Ex. 1).  It also advised plaintiff that:

> Unless you, the consumer, notify this office within thirty days after receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this office.  If you, the consumer, notify us within the thirty (30) days after receipt of this notice, that the debt or any portion thereof is disputed, this office will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this office.  Upon your written request within thirty days after receipt of this notice this office will provide you with the name and address of the original creditor, if different from the current creditor....
>
> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.  THIS IS A COMMUNICATION FROM A DEBT COLLECTOR[.]

(Compl. Ex. 1)(emphasis in original).  Plaintiff does not allege that she made any effort to dispute the debt or that she had any

such intent.   There are no allegations that Streeter Law engaged in any additional collection efforts.

Shortly after receiving the Letter, plaintiff filed the instant action, asserting two claims under the FDCPA.  (*See* Compl., Doc. Entry No. 1.)   Plaintiff's first claim is based on the content of the Letter.   She asserts that Streeter Law failed to inform her that she must request verification of the debt *in writing* and that this omission constitutes a violation of 15 U.S.C. §§ 1692g(a)(4), 1692(g)(b), and 1692e(10).   (*Id.* at ¶ 2.) Plaintiff's second claim focuses on defendant's debt collection practices.   Plaintiff asserts that defendant was not licensed to collect debts in New York City, as is required of debt collectors under New York Admin. Code tit. 20 ch. 2 § 20-490, and therefore, defendant, by mailing a collection letter, misrepresented its legal status to plaintiff in violation of 15 U.S.C. §§ 1692e(5) and 1692e(10).   (*Id.* at ¶ 3.)

Plaintiff served a summons and the complaint on defendant on April 23, 2008.  (*See* Doc. Entry Nos. 1, 2.) Plaintiff filed a motion for default judgment on October 1, 2008.  (Doc. Entry No. 3.)   Default was entered against defendant on October 30, 2008, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.   Plaintiff does not allege any actual loss; rather, plaintiff seeks statutory damages,

attorneys' fees and costs.  (*See* Compl.; Compl. Ex. 1; Doc. Entry No. 6, Kidd Nov. 7, 2008 Letter.)

For the reasons set forth below, this court enters judgment in favor of plaintiff and against defendant in the amount of $2,755.00, reflecting $500.00 in statutory damages, $415.00 in costs, and $1,840.00 in reasonable attorneys' fees.

**DISCUSSION**

**A.   Determination of Damages on a Motion for Default**

The Second Circuit has approved the holding of a damages inquest by affidavit without an in-person court hearing following a default, "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Moreover, when "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).  A default judgment that is entered on the well-pleaded allegations in a complaint establishes a defendant's liability, *see Bambu Sales, Inc. v. Ozark Trading Inc.*, 58 F.3d

4

849, 854 (2d Cir. 1995), and the sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief sought.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).  When, as here, default has been noted, a party's recovery is limited to the amount prayed for in its demand for judgment.  Fed. R. Civ. P. 54(c); *Scala v. Moore McCormack Lines, Inc.*, 985 F.2d 680, 683 (2d Cir. 1993).

In the instant action, defendant conceded the following facts due to its default:  (1) defendant is a "debt collector" as that term is used in the FDCPA (Compl. ¶ 3); (2) the Letter failed to specifically inform plaintiff that she was required to notify defendant *in writing* of any dispute regarding the validity of the debt to obtain verification of the debt (Compl. ¶ 7); (3) defendant attempted to collect a debt in New York City without the requisite debt collection license (Compl. ¶11).  In light of these uncontested facts, the court must now determine whether Streeter Law violated the aforementioned sections of the FDCPA so as to merit granting the relief sought -- statutory damages, attorneys' fees, and costs.

B.    **FDCPA Claims**

1.    **Validation Notice Claim**

The FDCPA was enacted to "protect consumers from unscrupulous debt collection practices . . . without imposing unnecessary restrictions on ethical debt collectors." *Tromba v. M.R.S. Assocs., Inc.*, 323 F. Supp. 2d 424, 426 (E.D.N.Y. 2004) (citing S. Rep. No. 382, 95th Cong., 1st Sess. 1-2 *reprinted in* 1997 U.S. Code Cong. & Admin. News 1695, 1696).  The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." *DeSantis v. Comp. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001).  Debt collectors are required to inform consumers of these rights in writing through what is commonly referred to as a "validation notice." *See Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (discussing consumer rights established by the FDCPA).  Specifically, a validation notice must inform the consumer of:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt,

or any portion thereof, the debt will be
assumed to be valid by the debt collector;

(4) a statement that if the consumer
notifies the debt collector in writing
within the thirty-day period that the debt,
or any portion thereof, is disputed, the
debt collector will obtain verification of
the debt or a copy of a judgment against the
consumer and a copy of such verification of
judgment will be mailed to the consumer by
the debt collector; and

(5) a statement that, upon the consumer's
written request within the thirty-day
period, the debt collector will provide the
consumer with the name and address of the
original creditor, if different from the
current creditor.

15 U.S.C. § 1692g(a).

In the Second Circuit, "the question of whether a
communication complies with the FDCPA is determined from the
perspective of the 'least sophisticated consumer.'" *E.g.*,
*Jacobson*, 516 F.3d at 90.  In applying this standard, the Second
Circuit is mindful of the FDCPA's dual purpose:  "(1) to ensure
the protection of all consumers, even the naïve and the
trusting, against deceptive debt collection practices, and
(2) to protect debt collectors against liability for bizarre or
idiosyncratic interpretations of collection notices."
*Kropelnicki v.* Siegel, 290 F.3d 118, 127 (2d Cir. 2001); *see
also Jacobson*, 516 F.3d at 90 ("[I]n addition to protecting
consumers against deceptive debt collection practices the test
we apply protects debt collectors from unreasonable

7

constructions of their communications."). The determination of
whether a validation notice complies with the FDCPA is an issue
of law that can be decided by a court. *See Miller v. Wolpoff &*
*Abramson, L.L.P.,* 321 F.3d 292 (2d Cir. 2003).

A validation notice must clearly convey the
protections available to consumers under the FDCPA. Courts will
find § 1692g(a) violated "even if the collector includes an
accurate validation notice, if that notice is overshadowed or
contradicted by other language in the communications to the
debtor." *Jacobson*, 516 F.3d at 90 (citing *Savino v. Computer*
*Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). "A notice
overshadows or contradicts the validation notice if it would
make the least sophisticated consumer uncertain as to her
rights." *Jacobson*, 516 F.3d at 90 (quoting *Russell v. Equifax*
*A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996)).

Plaintiff assails the validation notice for failure to
comply with 15 U.S.C. § 1692g(a)(4); namely, the failure to
advise plaintiff that she was required to notify Streeter Law *in*
*writing* if she wished to seek verification of the alleged debt.
Plaintiff contends that this omission "could reasonably lead the
least sophisticated consumer to believe, erroneously, that a
verbal dispute of the debt will protect her rights in obtaining
verification." (Compl. ¶ 9.) Plaintiff does not allege that

she made any effort, in writing or otherwise, to contact
Streeter Law or that she had any such intent.  Thus, she did not
suffer any consequences as a result of the omission, such as the
denial of an oral request for verification or the forfeiture of
any of the consumer protections enumerated in the FDCPA.

There is no authority from the Second Circuit on
whether the failure to include the words "in writing" amounts to
a violation of the FDCPA; however, there is an instructive case
from this district.  In resolving a motion to dismiss involving
a claim premised upon a verification notice with the same
infirmity -- omission of the words "in writing" -- District
Judge Spatt held that such a claim could proceed.  *See Grief v.
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp. 2d
336, 340-41 (E.D.N.Y. 2002) (denying a motion to dismiss a
verification notice claim).  As Judge Spatt noted, "[a]ny
consumer, not simply the least sophisticated consumer, who read
this letter would not know that to secure her right to obtain
verification of the debt and the identity of the original
creditor, her dispute of the debt and request for the identity
of the original creditor must be in writing."  *Grief*, 217 F.
Supp. 2d at 340; *cf. Jacobson*, 516 F.3d at 90 ("Significantly,
the FDCPA does not assume that the recipient of a collection
letter is aware of her right[s].").

Plaintiff is correct in faulting Streeter Law for the omission. Plaintiff's claim cannot be described as a "bizarre or idiosyncratic" interpretation of what is required under the FDCPA; rather, the validation notice clearly omitted an important term -- that the consumer must inform the debt collector *in writing* to be entitled to verification of the debt. It makes no difference whether Streeter Law would have honored an oral request. First, debt collectors have no duty to honor oral requests. *See Fasten v. Zager*, 49 F. Supp. 2d 144, 148-49 (E.D.N.Y. 1999) ("Under Section 1692g(4), verification is triggered only by the consumer writing a letter to the debt collector. Here, plaintiff's telephone call to defendant did not constitute such a request for verification."). Second, plaintiffs are not required to show that debt collectors intentionally violate the Act; however, "a debt collector may escape liability if it can demonstrate . . . that its violation of the Act was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Russell*, 74 F.3d at 34-35. By virtue of its default, Streeter Law has made no such showing.

The plain text of the FDCPA requires debt collectors to advise consumers of their rights in a prescribed manner, and Streeter Law failed to do so. Accordingly, plaintiff's request

for relief with respect to Streeter Law's violation of
§ 1692g(a)(4) is granted.

**2.   License-Related Claim**

In addition to ensuring that consumers receive proper
notification of their rights, the FDCPA regulates debt
collection practices.  As a general matter, debt collectors are
prohibited from using "any false, deceptive, or misleading
representation or means in connection with the collection of any
debt."  15 U.S.C. § 1692e.  The Act sets forth a non-exhaustive
list of prohibited practices.  For example, under § 1692e(5),
debt collectors are prohibited from threatening "to take any
action that cannot legally be taken or that is not intended to
be taken."  Additionally, under § 1692e(10), debt collectors are
prohibited from "[t]he use of any false representation or
deceptive means to collect or attempt to collect any debt or to
obtain information concerning a consumer."

As set forth above, by virtue of its default, Streeter
Law is deemed to have admitted that it attempted to collect a
debt in New York City without a debt collection license as is
required under New York Admin. Code tit. 20 ch. 2 § 20-490.
Plaintiff contends that any debt collection in violation of this
City regulation constitutes a violation of §§ 1692e(5) and
1692e(10).

11

The Second Circuit has not addressed whether this practice -- engaging in debt collection in a state or city without a locally required license -- constitutes a violation of these or any other provisions of the FDCPA.  Further, there is disagreement among the judges in this district.  In a 2004 Report and Recommendation, Magistrate Judge Steven M. Gold recommended dismissal of such a claim, noting that "an alleged violation of state or local law is insufficient to state a claim under the FDCPA."  *See Hirsch v. United Collection Corp.*, 03-CV-4884 (RJD)(SMG), 2004 U.S. Dist. LEXIS 29819, at *1-2 (E.D.N.Y. Oct. 27, 2004) (recommending dismissal of plaintiff's FDCPA claims).  Chief Judge Raymond J. Dearie adopted Magistrate Judge Gold's recommendation.  *See Hirsch v. United Collection Corp.*, 03-CV-4884 (RJD)(SMG), 2005 U.S. Dist. LEXIS 42680, at *1 (E.D.N.Y. Jan. 27, 2005) (dismissing plaintiff's claim).  In another case in which a plaintiff asserted the same claim -- that engaging in debt collection without a New York City license violated the FDCPA -- District Judge Carol Bagley Amon incorporated Magistrate Judge Gold's recommendation by reference and dismissed the case.  *See McDowell v. Vengroff, Williams & Assocs., Inc.*, 04-CV-1068 (CBA), 2006 U.S. Dist. LEXIS 41493, at *3 (E.D.N.Y. Jun. 21, 2006) (dismissing the case "for failure to state a claim under the FDCPA").

Reaching a different result, District Judge David G. Trager held that engaging in debt collection practices without a city license constitutes a violation of Sections 1692e(5) and (10). *See Williams v. Goldman & Steinberg, Inc.*, 03-CV-2132 (DGT), 2006 U.S. Dist. LEXIS 50222, at *2 (E.D.N.Y. July 21, 2006) ("I conclude that there was a violation of the FDCPA because the defendant did not have a license when it sent the Collection Letter to a New York City resident, as required by regulations of the City of New York.").

It appears that other courts in this circuit tend to recognize a violation of § 1692e(5) only when an unlicensed debt collector specifically threatens to take legal action against a debtor which it cannot do, because of its unlicensed status. *See Goins v. JBC & Assocs.*, 352 F. Supp. 2d 262, 269-72 (D. Conn. 2005) (granting plaintiff summary judgment on a § 1692e(5) claim as the "debt collection notice contained an unequivocal threat to take action," which the unlicensed debt collector could not, as a matter of law, pursue in Connecticut courts); *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1414-16 (D. Conn. 1990) (granting summary judgment to plaintiff on her licensing-related claim under § 1692e(5) as the unlicensed debt collector instructed plaintiff that "we are entitled to use, and we intend to use, all approved means at our command to collect

13

debts"). Notably, at least one judge has granted default judgment, awarding statutory damages, attorneys' fees, and costs in such a case. *See St. Denis v. New Horizon Credit, Inc.*, 05-CV-1952 (JBA), 2006 U.S. Dist. LEXIS 47446, at *5-12 (D. Conn. Jul. 12, 2006) (granting default judgment on a § 1692e(5) claim for engaging in unlicensed debt collection).

Courts do not, however, recognize technical failures to comply with state or city licensing statutes as actionable under the FDCPA. *See Kuhne v. Cohen & Slamowitz, LLP, et al.*, 07-CV-1364(HB), 2008 U.S. Dist. LEXIS 17197, at *14-16 (S.D.N.Y. Mar. 5, 2008) (granting summary judgment in favor of an unlicensed debt holder who hired a licensed debt collection service to collect the debts it held and had no direct contact with debtors); *Richardson v. Allianceone Receivables Mgt., Inc.*, 03-CV-5519 (DLC), 2004 WL 867732, at *2-4 (S.D.N.Y. Apr. 23, 2004) (dismissing plaintiff's licensing-related claim and holding that there is no claim under the FDCPA when a licensed debt collector fails to list its New York City license number on a collection letter); *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 180-81 (D. Conn. 1994) (granting summary judgment for defendant as there is no claim under the FDCPA when the out-of-state office of an in-state, licensed, legitimate debt collector sends a letter to an in-state debtor).

14

Permitting such claims to proceed would invite "a false, narrow, and overly mechanical reading of the FDCPA." *Lindbergh*, 846 F. Supp. at 181; *see also Kuhne*, 2008 U.S. Dist. LEXIS 17197, at *15 ("To require [a debt holder] to be licensed, when it had no direct contact with the consumer, would run afoul of the purpose of the New York City licensing statute and the FDCPA, which are aimed at preventing abusive debt collection practices."); *Richardson*, 2004 WL 867732, at *3 ("The violation of a technical City ordinance not specific to debt collection activities resulting in no identifiable harm to [the plaintiff] is insufficient to state a claim under the FDCPA.").

Only one circuit has addressed whether the conduct at issue in this case is actionable under the FDCPA. In *Wade v. Regional Credit Assoc.*, the Ninth Circuit rejected the notion that a violation of state licensing law categorically constitutes a violation of the FDCPA. *See Wade v. Regional Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996) ("We disagree with Wade that debt collection practices in violation of state law are *per se* violations of the FDCPA."). In that case, an unlicensed debt collector mailed a collection letter that provided the standard, required notices, including notice to the debtor that the letter was "sent to [her] by a collection agency and is an attempt to collect a debt and any information obtained

15

will be used for that purpose." *Id*. at 1099.  It further stated
that the debtor's credit "may be adversely affected." *Id*.  In
rejecting the § 1692e(5) claim, the Ninth Circuit held that
neither of these statements, particularly the statutorily
required notice, could be construed as a threat to litigate (by
a party with no legal authority to sue).  *Id*. at 1100 (holding
that the assailed notices were "informational" and not "threats
to sue").  In rejecting the § 1692e(10) claim, the Ninth Circuit
held that there was nothing deceptive about the debt collection
letter as it contained no statements by the defendant that it
had the authority to file lawsuits in the debtor's state of
residence.  *Id*.

There is insufficient legal support for a categorical
holding that debt collection efforts initiated in New York City
by unlicensed debt collectors violate § 1692e(5) or § 1692e(10)
of the FDCPA.  Not every violation of state or city law amounts
to a violation of the FDCPA.  *See Hirsch*, 2004 U.S. Dist. LEXIS
29819, at *1 (noting that "an alleged violation of state or
local law is insufficient to state a claim under the FDCPA");
*Lindbergh*, 846 F. Supp. at 181 ("Put simply, the mere fact that
certain letters were mailed to the plaintiff from the
defendant's California address -- standing alone -- does not
suffice to raise an issue of material fact as to whether the

defendant violated the FDCPA."). Thus, this court will examine the language of Streeter Law's communication to determine whether any statements contained in the communication violated either provision of the FDCPA.

With respect to the § 1692e(5) claim, plaintiff failed to specify which statements in the Letter violated the FDCPA. A review of the communication indicates that Streeter Law notified plaintiff, as it must under the FDCPA, that:

> THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS IS A COMMUNICATION FROM A DEBT COLLECTOR[.]

(Compl. Ex. 1.) This statutorily required notice cannot be construed as a threat to litigate. In fact, had Streeter Law failed to include the notice, Streeter Law would have violated the FDCPA. *See* 15 U.S.C. § 1692e(11); *Wade*, 87 F.3d at 1100 (holding that a debt collector cannot be held liable for including statutorily required notices). The court is unable to locate any other statements in the communication that one could construe as a litigation threat. *See Kapeluschnik v. LeSchack & Grodensky, P.C.*, 96-CV-2399(ERK)(CLP), 1999 U.S. Dist. LEXIS 22883, at *17-26 (E.D.N.Y. Aug. 25, 1999) (granting summary judgment in defendant's favor and noting that the collection letter from the defendant-law firm contained "no language . . .

implying or conveying a threat to take legal action"). Indeed, unlike the successful claims discussed above, there are no threatening statements whatsoever in the Letter, such as threats to harm plaintiff's credit rating. The mere fact that the Letter was sent from a law firm, rather than a debt collection service, does not amount to a threat to litigate, particularly in the absence of threatening statements of any kind. *See Kapeluschnik*, 1999 U.S. Dist. LEXIS 22883, at *19 ("Courts have required more than the fact that a collection letter is from an attorney to find a section 1692e(5) violation."). Accordingly, plaintiff's request for relief for the asserted § 1692e(5) violation is denied.

With respect to plaintiff's § 1692e(10) claim, again, plaintiff failed to alert the court to any representations by Streeter Law that it is licensed in New York City or that it has the legal authority to litigate in the courts of this state. Likewise, the court is unable to locate any statements to that effect in the Letter. Thus, Streeter Law made no misrepresentations as to its legal status under local law. Accordingly, plaintiff's request for damages for the asserted § 1692e(10) violation is denied.

18

C.    DAMAGES, ATTORNEYS' FEES, AND COSTS

        Under the FDCPA, "any debt collector who fails to
comply with any provision of [the FDCPA] with respect to any
person is liable to such person . . . [for] . . . any actual
damage sustained by such person as a result of such failure;
. . . such additional damages as the court may allow, but not
exceeding $1,000 . . . and the costs of the action, together
with a reasonable attorney's fee as determined by the court."
15 U.S.C. § 1692k(a).  The "additional damages" mentioned in
this provision are commonly referred to as "statutory damages."
"The decision whether to award statutory damages under the FDCPA
and the size of the award are matters committed to the sound
discretion of the district court."  *E.g.*, *Savino*, 164 F.3d at
86.  "All that is required for an award of statutory damages is
proof that the statute was violated, although a court must then
exercise its discretion to determine how much to award, up to
the $1,000 ceiling." *Id.*; *Jacobson*, 516 F.3d at 91 ("In order to
prevail, it is not necessary for a plaintiff to show that she
herself was confused by the communication she received; it is
sufficient for a plaintiff to demonstrate that the least
sophisticated consumer would be confused.").  To determine the
amount of statutory damages to award a successful litigant,
"[t]he district court must consider the frequency and

                              19

persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors." *Savino*, 164 F.3d at 86.

With respect to damages, plaintiff seeks an award of $1,000.00 in statutory damages and no actual damages. As set forth above, defendant Streeter Law is liable for a violation of § 1692g(a)(4), as the Letter failed to inform plaintiff that she was required to request validation of the debt in writing to preserve her rights. There are no allegations as to whether Streeter Law's non-compliance was intentional. Additionally, there are no allegations as to the persistence or frequency of Streeter Law's unlawful conduct. Notably, the Letter contained no threatening language whatsoever and plaintiff suffered no actual damages.

Under these circumstances, an award of $500.00 is in line with statutory damages awarded in other FDCPA cases in this circuit. *See Savino*, 164 F.3d at 86 (affirming a district court's award of $500.00 against a debt collector whose non-compliance was not intentional and whose communication was "not threatening or abusive in tone"); *Baruch v. Healthcare Rec. Mgt., Inc.*, 05-CV-5392 (CPS)(JMA), 2007 U.S. Dist. LEXIS 80429, at *13-14 (awarding $1,000.00, the statutory maximum, in a case

20

in which defendants repeatedly contacted plaintiff in violation
of the FDCPA, threatening to sue plaintiff and harm her credit
rating); *see also Overcash v. United Abstract Group Inc.*, 549 F.
Supp. 2d 193, 196-97 (N.D.N.Y. 2008) (awarding a plaintiff
$1,000.00 in statutory damages against defendants who repeatedly
sought to collect debts already paid or debts in excess of what
was owed); *Dowling v. Kucker Kraus & Bruh, LLP*, 99-CV-11958
(RCC), 2005 U.S. Dist. LEXIS 11000, at *14-15 (Jun. 6, 2005)
(awarding $550 per plaintiff in a case in which defendants' rent
collection demands "technically violated the statute dozens of
times").  Accordingly, plaintiff is awarded $500.00 in statutory
damages.

Plaintiff seeks an award of costs and attorneys' fees
as well.  Plaintiff seeks $415.00 in costs, reflecting payment
of a $350.00 court filing fee and a $65.00 process service fee.
Plaintiff seeks $2,530.00 in attorneys' fees, reflecting 9.2
hours of work at an hourly rate of $275.00.  (*See* Kidd Affirm.
Attach.)  In support of her application for attorneys' fees,
plaintiff submitted a record summarizing her attorney's time
records and diary entries.  (*See id.*)

Under the FDCPA, a prevailing plaintiff is entitled to
costs and reasonable attorneys' fees.  *See* 15 U.S.C. §
1692k(a)(3); *Jacobson*, 516 F.3d at 95 ("The FDCPA provides for

21

fee-shifting as a matter of course to successful plaintiffs."). Thus, the issues before the court are whether (i) plaintiff submitted the appropriate documentation to support an award of attorneys' fees, and (ii) the rate requested and hours expended were reasonable.

In the Second Circuit, a party seeking attorneys' fees "must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983); *see McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 (2d Cir. 2006) (citing *Carey* with approval). Attorney fee applications that do not contain such supporting data "should normally be disallowed." *Carey*, 711 F.2d at 1154; *see Kingvision v. Jasper Grocery*, 152 F. Supp. 2d 438, 443 (S.D.N.Y. 2001) ("[F]ailure to support a fee application with [such] records generally results in denial of any award.").

Here, plaintiff submitted the requisite proof for consideration of an award of attorneys' fees. In support of her request, plaintiff submitted a record specifying the hours worked and tasks performed on each date by Novlette R. Kidd, Esq, plaintiff's attorney. (*See* Billing Record, Attached to

22

Kidd. Affirm.)  According to this record, plaintiff's attorney
spent 9.2 hours on this action.  (*Id.*)  Plaintiff's attorney is
an associate with the law firm of Fagenson & Puglisi, and was
admitted in September 2001.  (Kidd Affirm. ¶ 1; Billing Record.)

To determine whether the requested hourly rate -- $275
-- is warranted, the court must determine "'what a reasonable,
paying client would be willing to pay,'" in this district "given
that such a party wishes 'to spend the minimum necessary to
litigate the case effectively.'"  *See Simmons v. New York City
Transit Auth.*, No. 08-4079-cv, 2009 U.S. App. LEXIS 17079, at *7
(2d Cir. Aug. 3, 2009) (quoting *Arbor Hill Concerned Citizens
Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 112, 118
(2d Cir. 2007)).  The Second Circuit recently held in *Simmons*
that "a district court must first apply a presumption in favor
of application of the forum rule", under which "district courts
are directed to calculate attorney's fees based on the rates
prevalent in the forum in which the litigation was brought."
*Simmons*, 2009 U.S. App. LEXIS 17079, at *2, 11-12.  "[T]o
overcome that presumption, a litigant must persuasively
establish that a reasonable client would have selected out-of-
district counsel because doing so would likely (not just
possibly) produce a substantially better net result."  *Id.*, at
*12.

23

In this action, plaintiff failed to submit any
evidence or argument as to why this court should deviate from
the standard fees awarded in this district, as opposed to the
Southern District of New York, where the law office in which
Kidd works is located.  Accordingly, the court will determine
whether the hourly billing rate requested -- $275 – is
appropriate for an associate in this district.

The court finds that an hourly rate of $275 for an
associate is in excess of "what a reasonable, paying client
would be willing to pay" in this district for similar
representation.  *See Arbor Hill,* 493 F.3d at 112.  For example,
in the context of an FDCPA case, one court noted that "[i]n the
Eastern District of New York, courts have awarded hourly rates
to partners ranging from $200.00 to $375.00."  *Baruch*, 2007 U.S.
Dist. LEXIS 80429, at *5.  The standard rate for associates is
lower.  *See Palmareal Produce Corp. v. Direct Produce # 1, Inc.*,
No. 07-CV-1364, 2008 U.S. Dist. LEXIS 109440, at *11-12
(E.D.N.Y. Mar. 31, 2008) (observing that hourly rates approved
in recent Eastern District of New York cases have ranged from
$100 to $150 for junior associates and $200 to $250 for senior
associates) (citing *Commission Express Nat'l, Inc. v. Rikhy*, No.
CV-03-4050, 2006 U.S. Dist. LEXIS 8716, 2006 WL 385323, at *6
(E.D.N.Y. Feb. 17, 2006)).  Plaintiff has not attempted to

"persuasively establish" that the higher rate sought is justified. *See Simmons*, 2009 U.S. App. LEXIS 17079, at *12. The court finds that an hourly rate of $200 is appropriate for a senior associate in this district.

    With respect to the amount of time expended, the court finds that 9.2 hours of work is not out of line with other FDCPA cases in which fees were awarded following the entry of default judgment. *See Overcash*, 549 F. Supp. 2d 193 at 97 (awarding plaintiff attorneys' fees reflecting 11 hours of work); *St. Denis*, 2006 U.S. Dist. LEXIS 47446, at *10 (awarding attorneys' fees reflecting 6 hours of work for a successful entry of default judgment against a defendant for violating the FDCPA). As plaintiff's attorney's time sheets indicate, he interviewed plaintiff, conducted legal research, prepared the summons and complaint, prepared and filed the notice of default, and contacted opposing counsel on several occasions, among other tasks. Accordingly, the court awards plaintiff $415.00 in costs and $1840.00 in attorneys' fees, reflecting 9.2 hours of work at an hourly rate of $200.00.

**CONCLUSION**

For the foregoing reasons, judgment is entered in plaintiff's favor against defendant.  Plaintiff is hereby awarded $500.00 in statutory damages, $415 in costs, and $2,530.00 in reasonable attorneys' fees.

**SO ORDERED.**

Dated:      Brooklyn, New York
            September 10, 2009

                    _____/s/_____
                    **KIYO A. MATSUMOTO**
                    United States District Judge
                    Eastern District of New York